http://www.va.gov/vetapp16/Files4/1630426.txt

Citation Nr: 1630426 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 10-46 623 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUE

Entitlement to an increased disability evaluation for the Veteran's cervical strain, in excess of 10 percent prior to April 18, 2016, and in excess of 20 percent for the period on and after April 18, 2016.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESSES AT HEARING ON APPEAL

Appellant and Appellant's Wife

ATTORNEY FOR THE BOARD

J. Tunis, Associate Counsel

INTRODUCTION

The Veteran had active service from October 1989 to October 1993.

This matter comes before the Board of Veterans' Appeals (Board or BVA) on appeal from a September 2009 rating decision of the Waco, Texas, Regional Office (RO), which denied an increased disability evaluation for the Veteran's cervical strain. 

The Veteran was granted service connection for his cervical strain in a July 1995 rating decision. The July 1995 rating decision assigned a 10 percent disability rating, effective October 23, 1993. In March 1999 and March 2000, the Veteran filed claims for an increased rating, and in May 1999 and September 2000 rating decisions, the RO continued to evaluate the Veteran's cervical strain as 10 percent disabling. In May 2009, the Veteran filed a claim for an increased rating, and in a September 2009 rating decision the RO evaluated the Veteran's cervical strain at 10 percent. In a July 2016 rating decision, the RO increased the Veteran's cervical strain to 20 percent effective April 18, 2016. The grant of an increased rating during the course of an appeal does not affect the pendency of that appeal. AB v. Brown, 6 Vet. App. 35 (1993). As the Veteran is presumed to be seeking the maximum allowable benefit and the maximum benefit has not yet been awarded, the claim is still in controversy and on appeal. Id.

The Board also notes that the RO in the July 2016 rating decision granted service connection for radiculopathy of the left upper radicular group and middle radicular groups and radiculopathy of the right upper radicular group and middle radicular group, both evaluated as 20 percent disabling. However, as of yet, the Veteran has not appealed the issue of radiculopathy of the left and right upper radicular groups and middle radicular groups. Therefore, because the issue of bilateral radiculopathy has been rated separately, and the issue has not been formally appealed by the Veteran, the Board does not find that the matter is currently before the Board on appeal.

In April 2016, the Veteran filed a claim for increased compensation based on unemployability, asserting that multiple service-connected disabilities prevent him from securing or following any substantially gainful occupation. However, the RO in the July 2016 rating decision denied the issue of entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). Again, as of yet, the Veteran has not appealed the issue of TDIU. Therefore, because the issue of TDIU has been rated separately, and the issue has not been formally appealed by the Veteran, the Board does not find that the matter is currently before the Board on appeal.

Pertaining to the issue of entitlement to an increased rating for the Veteran's cervical strain, in July 2010, the Board remanded the issue to the RO for a hearing before a Veterans Law Judge (VLJ) sitting at the RO. The Veteran was afforded a hearing before the undersigned VLJ sitting at the RO in March 2012. A transcript of the hearing is of record. However, the issue was again remanded by the Board in December 2013 for further development and adjudication. As will be discussed further below, the remand directives have been substantially complied with and the matter is now properly before the Board. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Board notes that additional evidence has been added to the record since the last issuance of the Supplemental Statement of Case in July 2014. Specifically, a May 2016 VA examination of the cervical spine has been added to the record. However, this matter is properly before the Board and does not require a remand to the Agency of Original Jurisdiction (AOJ) for initial consideration because in July 2014 the Veteran submitted a waiver. The July 2014 waiver states, "[i]f we locate and wish to submit evidence at a later time, we waive the Veteran's right to have the Veteran's case remanded (sent back) to the Agency of Original Jurisdiction (the Veteran's Regional Office (RO)) an we ask that the BVA consider the new evidence and proceed with the adjudication of the Veteran's appeal."

The Board has reviewed the electronic claims file maintained on the Veterans Benefits Management System (VBMS) and on Virtual VA.

FINDINGS OF FACT

1. Prior to April 18, 2016, the Veteran's cervical spine disability was manifested by pain, functional loss, limitation of motion, and forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; favorable ankylosis of the entire cervical spine is not shown.

2. From April 18, 2016, forward, the Veteran's cervical spine disability was manifested by pain, functional loss, limitation of motion, and forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; favorable ankylosis of the entire cervical spine is not shown.

CONCLUSIONS OF LAW

1. Prior to April 18, 2016, the criteria for a rating of 20 percent, but no higher, for the Veteran's cervical strain have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.3, 4.7, 4.71, 4.71a, Diagnostic Code (DC) 5237.

2. From April 18, 2016, forward, the criteria for a rating in excess of 20 percent, for the Veteran's cervical strain have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.321, 4.3, 4.7, 4.71, 4.71a, Diagnostic Code (DC) 5237.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. The Veterans Claims Assistance Act (VCAA)

VA has met all statutory and regulatory notice and duty to assist provisions. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative, if any, of any information, and any medical evidence or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); see also Quartuccio v. Principi, 16 Vet. App. 183 (2002). In accordance with 38 C.F.R. § 3.159(b)(1), proper notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide.

As to VA's duty to notify, this appeal arises from the Veteran's disagreement with the evaluation following the grant of service connection for cervical strain. The United States Court of Appeals for the Federal Circuit and the United States Court of Appeals for Veterans Claims (Court) have held that once service connection is granted the claim is substantiated, additional notice is not required for downstream issues that follow directly, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007).

Nevertheless, the Board notes that a letter dated July 2009 fully satisfied the duty to notify provisions. See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b)(1) (2015); Quartuccio, 16 Vet. App. at 187. The Veteran was advised regarding the evidence that VA is responsible for obtaining. The Veteran was also advised that it was ultimately his responsibility to give VA any evidence pertaining to the claim. The letters informed him that additional information or evidence was needed to support his claim, and asked him to send the information or evidence to VA. The letter also explained to the Veteran how disability ratings and effective dates are determined. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

The Board also concludes VA's duty to assist has been satisfied. The Veteran's service treatment records are in the file. The Veteran was afforded a hearing before the VLJ in March 2012. Both VA treatment records and private medical records identified by the Veteran have been associated with the claims file. The Veteran has at no time referenced outstanding records that he wanted VA to obtain or that he felt were relevant to the claim. Furthermore, an Statement of the Case (SOC) dated October 2010 and a Supplemental Statement of the Case (SSOC) dated July 2014 was sent to the Veteran, explaining the status of his claim, what information had been collected, and what information still remained outstanding.

The duty to assist includes, when appropriate, the duty to conduct a thorough and contemporaneous examination of the appellant. Green v. Derwinski, 1 Vet. App. 121 (1991). In addition, where the evidence of record does not reflect the current state of the Veteran's disability, a VA examination must be conducted. Schafrath v. Derwinski, 1 Vet. App. 589 (1991); 38 C.F.R. § 3.327(a) (2015). In this case, the RO provided the Veteran appropriate VA examinations in July 2009, January 2014, and May 2016. The VA examination reports are thorough and include all appropriate range of motion tests. The examination report discussed the clinical findings, the Veteran's current diagnoses and reported symptoms, and the Veteran's reported history as necessary to rate the disability under the applicable rating criteria. The examination reports also discussed the functional impact of the disability on the Veteran's daily living. The Veteran does not allege any current worsening of symptoms, and therefore, the Board finds the medical examinations of record to be thorough, well supported, and probative of the Veteran's current state.

In sum, based on a review of the claims file, the Board finds there is no indication in the record that any additional evidence relevant to the issue to be decided herein is available and not part of the claims file. See Mayfield v. Nicholson, 499 F.3d 1317 (Fed. Cir. 2007). Thus, for the foregoing reasons, it is not prejudicial to the appellant for the Board to proceed to a final decision in this appeal as to the issue of increased disability rating for his service-connected cervical strain.

II. Stegall Compliance 

As explained in the Introduction, in July 2010, the Board remanded the Veteran's appeal to the RO so that the Veteran could be afforded a hearing before a Veterans VLJ sitting at the RO. Accordingly, the Veteran was afforded a hearing before the undersigned Veterans Law Judge sitting at the RO in March 2012, and a transcript of the hearing is of record. 

However, the matter was again remanded by the Board in December 2013 for further development and adjudication. Specifically, the Board directed the RO to obtain all treatment records dated after May 2008. Following the December 2013 remand, VA treatment records from July 2008 to December 2013 have been added to the electronic claims file. Furthermore, private treatment records have from December 2013 have been added to the record.

Furthermore, the December 2013 remand directed the RO to schedule the Veteran for a VA spine evaluation to assist in determining the current nature and severity of his service-connected cervical strain. The Veteran was afforded a VA examination in January 2014 and May 2016. The examination reports include all appropriate range of motion testing and note the Veteran's medical symptoms and history. The Veteran has not asserted that the examinations afforded to him were inadequate. 

Also in accordance with the remand directives, the RO readjudicated the Veteran's claim, and provided the Veteran with an SOC in October 2010 and a SSOC in July 2014. 

The Board finds that its remand instructions have been substantially complied with. See Stegall, 11 Vet. App. at 271 (holding that the Board errs as a matter of law by failing to ensure compliance with its remand orders). The matter is now appropriately returned to the Board.

III. Increased Schedular Rating 

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). That said, higher evaluations may be assigned for separate periods based on the facts found during the appeal period. See Fenderson v. West, 12 Vet. App. 119, 126 (1999). This practice is known as staged ratings. Id. 

If the evidence for and against a claim is in equipoise, the claim will be granted. 38 C.F.R. § 4.3. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In rendering a decision on appeal, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994).

In this case, as explained in the Introduction, the Veteran was granted service connection for his cervical strain in a July 1995 rating decision. The July 1995 rating decision assigned a 10 percent disability rating, effective October 23, 1993. In May 2009, the Veteran filed a claim for an increased rating. This matter is now before the Board on appeal of a September 2009 rating decision which continued to evaluate the Veteran's cervical strain at 10 percent under the General Rating Formula for Diseases and Injuries of the Spine, lumbosacral or cervical strain (Diagnostic Code 5237). However, in a July 2016 rating decision, the RO increased the Veteran's cervical strain to 20 percent effective April 18, 2016, also under General Rating Formula for Diseases and Injuries of the Spine, lumbosacral or cervical strain (Diagnostic Code 5237). The grant of an increased rating during the course of an appeal does not affect the pendency of that appeal. See AB, 6 Vet. App. at 35. 

The General Rating Formula for Diseases and Injuries of the Spine, lumbosacral or cervical strain (Diagnostic Code 5237) provides a 10 percent disability rating for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or, forward flexion of the cervical spine greater than 30 degrees but not greater than 40 degrees; or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees; or, combined range of motion of the cervical spine greater than 170 degrees but not greater than 335 degrees; or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. 38 C.F.R. § 4.71a.

A 20 percent disability rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. Id.

A 30 percent disability rating is assigned for forward flexion of the cervical spine 15 degrees or less; or, unfavorable ankylosis of the entire cervical spine. Id.

A 40 percent disability rating is assigned for unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine 30 degrees or less; or, unfavorable ankylosis of the entire thoracolumbar spine. Id.

A 50 percent disability rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine. Id.

A 100 percent disability rating is assigned for unfavorable ankylosis of entire spine. Id.

The Notes following the General Rating Formula for Diseases and Injuries of the Spine provide further guidance in rating diseases or injuries of the spine. Note (1) provides that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be rated separately under an appropriate diagnostic code. 

Note (2) provides that, for VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion are zero to 45 degrees, and left and right lateral rotation are zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the cervical spine is 340 degrees and of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. See also Plate V, 38 C.F.R. § 4.71a. 

Note (3) provides that, in exceptional cases, an examiner may state that because of age, body habitus, neurologic disease, or other factors not the result of disease or injury of the spine, the range of motion of the spine in a particular individual should be considered normal for that individual, even though it does not conform to the normal range of motion stated in Note (2). Provided that the examiner supplies an explanation, the examiner's assessment that the range of motion is normal for that individual will be accepted. 

Note (4) provides that the rater is to round each range of motion measurement to the nearest five degrees. 

Note (5) provides that, for VA compensation purposes, unfavorable ankylosis is a condition in which the entire cervical spine, the entire thoracolumbar spine, or the entire spine is fixed in flexion or extension, and the ankylosis results in one or more of the following: difficulty walking because of a limited line of vision; restricted opening of the mouth and chewing; breathing limited to diaphragmatic respiration; gastrointestinal symptoms due to pressure of the costal margin on the abdomen; dyspnea or dysphagia; atlantoaxial or cervical subluxation or dislocation; or 
neurologic symptoms due to nerve root stretching. Fixation of a spinal segment in neutral position (zero degrees) always represents unfavorable ankylosis. 

Note (6) provides that disability of the thoracolumbar and cervical spine segments are to be rated separately, except when there is unfavorable ankylosis of both segments, which will be rated as a single disability. 38 C.F.R. § 4.71a.
Diagnostic Code 5243 provides that intervertebral disc syndrome (IVDS) is to be rated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher rating when all disabilities are combined under 38 C.F.R. § 4.25. 

Upon review of all the evidence of record, both lay and medical, the Board finds that, for the entire rating period on appeal, the weight of the evidence demonstrates that the symptoms and impairment resulting from the service-connected cervical strain more nearly approximates a 20 percent rating. 

Of record, are VA treatment records from October 2008 to July 2016. VA treatment records note a history of chronic neck pain, spasmodic torticollis, and pain that radiates from neck to both arms, shoulders, and lower back. The Veteran specifically reported that he has an "aching/ throbbing to sharp/ stabbing" in his neck, that feels like a constant crick in his neck. 

The Veteran was provided a hearing in March 2012, during which the Veteran testified that he experiences numbness, tingling, and stiffness in his neck, with pain streaming down from his neck and shoulder to his arms and lower back. The Veteran reported that he has received injections in his neck and physical therapy at the VA.

The Veteran was afforded a VA examination in July 2009. The examiner noted "degenerative disc disease of the cervical spine with neck pain, bilateral arm radiation, and moderate disability with progression." Upon range of motion testing, the Veteran demonstrated a forward flexion of 0-20 degrees, extension of the neck at 10 degrees, right lateral movement of 40 degrees, left lateral movement of 30 degrees, right flexation of 10 degrees, and left flexation of 15 degrees. The examiner concluded that the Veteran does not use any assistive device for his neck, and that his disability affects his daily life and occupation in that he is in pain and he is only able to work part-time at his job at the post office. The examiner did not find any additional decrease in range of motion with repetitive movement as it relates to pain, weakness, fatigability, or incoordination, with no additional decrease in range of motion with flare-ups. The examination report does not indicate ankylosis of the spine.

The Veteran was again afforded a VA examination in January 2014. The examiner indicated the following cervical spine conditions: cervical strain, degenerative arthritis of the spine, intervertebral disc syndrome, and vertebral fracture; and reported the following diagnoses: cervical strain, wedge compression fracture of fifth cervical vertebrae, and osteoarthritis. Range of motion testing indicates a forward flexion of 30 degrees with pain beginning at 30 degrees, extension of the neck at 40 degrees with pain beginning at 40 degree, right lateral flexion of 40 degrees with pain beginning at 40 degrees, left lateral flexion of 45 degrees with pain beginning at 45 degrees, right lateral rotation of 50 degrees with pain beginning at 50 degrees, and left lateral rotation of 70 degrees with pain beginning at 70 degrees. The examiner did not find additional limitation of movement following repetitive use testing, but did note functional loss in that the Veteran experiences less movement than normal and pain on movement. The examiner further noted localized tenderness or pain to palpation, but did not find muscle spasms resulting in abnormal gait or abnormal spinal contour or guarding of the cervical spine resulting in abnormal gait or abnormal spinal contour. The examiner did, however, note the use of a cane as an assistive device, and report moderate intermittent pain and numbness of the bilateral upper extremities (with the C5/C6 nerve roots involved). The examination report does not indicate ankylosis of the spine. 

Most recently, the Veteran received a VA examination in May 2016. The Veteran was diagnosed with cervical strain and bilateral radiculopathy of the C5-6 and C7. The examination report indicates current symptoms and a history of severe neck pain, shoulder pain that streams down his arms and hands, and pain in his upper and lower back. The Veteran's functional loss is noted as "difficulty with physical labor and lifting and neck movements and any looking up" The Veteran's range of motion testing produced the following results: forward flexion at 20 degrees, extension at 10 degrees, right lateral flexion at 15 degrees, left lateral flexion at 15 degrees, right lateral rotation at 30 degrees, and left lateral rotation at 40 degrees. The examiner indicated that the Veteran was able to perform repetitive-use testing with at least three repetitions and that there was no additional loss of function or range of motion after three repetitions. The range of motion itself contributes to the functional loss because the neck is generally stiff with decreased range of motion. Furthermore, the examination report indicates tenderness of the neck at a mild severity. The Veteran does not have muscle spasms of the neck, abnormal gait or abnormal spinal contour, but did have guarding, with hesitancy to move his neck in any direction. The examination report does not indicate ankylosis of the spine.

The Board finds that for the entire period on appeal, a rating of 20 percent, but no higher, is warranted. Both prior to April 18, 2016, and for the period on and after April 18, 2016, the Veteran's cervical spine disability was manifested by pain, functional loss, limitation of motion, and forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees. See38 C.F.R. §4.71a DC 5237. Specifically, at the July 2009 VA examination, the Veteran's forward flexion was measured at 20 degrees; at the January 2014 VA examination, the Veteran's forward flexion was measured at 30 degrees; and at the May 2016 VA examination, the Veteran's forward flexion was measured at 20 degrees. All three VA examinations, and all VA treatment records, do not contain any report of ankyloses of the spine. Therefore, the evidence of record reflects consistent manifestation of range of motion forward flexion that meet the 20 percent rating criteria.

The evidence of record for the period prior to April 18, 2016, and for the period on and after April 18, 2016, does not indicate that an increased disability rating of 30 percent is warranted. The evidence does not contain range of motion measurements that show forward flexion of the cervical spine at 15 degrees or less. Although the Veteran had pain on motion, such pain did not functionally limit flexion to 15 degrees or result in ankylosis of the cervical spine, and any painful motion or pain on use is already contemplated in the 20 percent rating. Further, there was no evidence of ankylosis or any limitation of motion that reasonably approximates ankylosis. While the examination reports note functional loss of the use of the Veteran's neck in that there was some loss in movement, such limitation in range of motion is considered in the current rating. The Veteran has not alleged that he had any functional limitation not already contemplated. DeLuca v. Brown, 8 Vet. App. 202 (1995). Therefore, the Board finds that a rating in excess of 20 percent is not warranted.

The Board also considers whether DC 5003 might serve as a basis for an increased rating in this case. DC 5003 provides that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. However, when there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate diagnostic codes, DC 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under DC 5003. A rating of 20 percent requires X-ray evidence of involvement of two or more major joints or two or more minor joint groups, with occasional incapacitating exacerbations. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a.

In this case, the January 2014 VA examination report indicates degenerative arthritis of the cervical spine, with a diagnosis of osteoarthritis of the cervical spine. However, the Board notes that no additional higher or alternative ratings under DC 5003 can be applied for the entire period on appeal because the service-connected disability is already rated at 20 percent disabling under DC 5237, and 20 percent disabling is the highest rating available under DC 5003.

Moreover, when evaluating disabilities of the spine, any associated objective neurologic abnormalities are to be rated separately under an applicable DC. 38 C.F.R. § 4.71a, General Formula, Note 1. Here, service connection for the Veteran's bilateral radiculopathy has already been granted, and therefore are already contemplated by the assigned ratings. As noted above, no issue regarding the bilateral radiculopathy is in appellate status. No other neurologic abnormalities have been noted as being associated with the Veteran's cervical strain. As such, no additional separate compensable ratings are warranted.

Therefore, all potentially applicable diagnostic codes have been considered. See Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991). Thus, the Board finds that a higher disability rating of 20 percent for the Veteran's cervical strain is granted from May 19, 2009, to April 17, 2016, but a disability rating in excess of 20 percent for the Veteran's cervical strain for the period on and after April 18, 2016, is denied.

IV. Extraschedular Consideration

The Board has considered whether referral for an "extraschedular" evaluation is warranted. In exceptional cases, an extraschedular rating may be provided. 38 C.F.R. § 3.321. The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for the service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the Veteran's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008). If the criteria reasonably describe the Veteran's disability level and symptomatology, then the Veteran's disability picture is contemplated by the rating schedule and no referral is required.

In the second step of the inquiry, however, if the schedular evaluation does not contemplate a Veteran's level of disability and symptomatology and is found inadequate, it must determine whether the Veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a Veteran's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step, a determination of whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating. Id.

In this case, the evidence fails to meet the threshold factor-unique or unusual symptomatology regarding the Veteran's service-connected disability that would render the schedular criteria inadequate. The Veteran's symptoms, including pain, limitation of motion, and radiating pain, are contemplated in the ratings assigned; thus, the application of the Rating Schedule is not rendered impractical. Moreover, the Veteran has not argued that his symptoms are not contemplated by the rating criteria; rather, he merely disagreed with the assigned disability ratings for his levels of impairment. In other words, he does not have any symptoms from his service-connected cervical strain that are unusual or different from those contemplated by the schedular criteria. 

In fact, for all musculoskeletal disabilities, the rating schedule contemplates functional loss, which may be manifested by, for example, decreased, or abnormal excursion, strength, speed, coordination, or endurance. 38 C.F.R. § 4.40; Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011). For disabilities of the joints in particular, the rating schedule specifically contemplates factors such as weakened movement; excess fatigability; pain on movement; disturbance of locomotion; and interference with sitting, standing, and weight bearing. 38 C.F.R. §§ 4.45, 4.59; Mitchell, 25 Vet. App. at 37. In summary, the schedular criteria for musculoskeletal disabilities contemplate a wide variety of manifestations of functional loss.

Given the ways in which the rating schedule contemplates the Veteran's disability, the Board concludes that the schedular rating criteria reasonably describe the Veteran's service-connected cervical strain. There is nothing exceptional or unusual about this disability because the respective rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

Moreover, the Veteran has not alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). According to Johnson v. McDonald, a veteran may be entitled to "consideration [under 38 C.F.R. § 3.321(b)] for referral for an extra-schedular evaluation based on multiple disabilities, the combined effect of which is exceptional and not captured by schedular evaluations." Referral for an extraschedular rating under 38 C.F.R. § 3.321(b) is to be considered based upon either a single service-connected disability or upon the "combined effect" of multiple service-connected disabilities when the "collective impact" or "compounding negative effects" of the service-connected disabilities, when such presents disability not adequately captured by the schedular ratings for the service-connected disabilities. 

In this case, the Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. 

However, to the extent that the Veteran has asserted that he is unemployable due to multiple service-connected disabilities, the Veteran has filed a separate claim for TDIU, which was denied in a July 2016 rating decision. As explained in the Introduction, the Veteran has not appealed the denial of his TDIU as of yet, and therefore, this matter is not currently before the Board for consideration. 

Accordingly, the Board finds that referral for consideration of an extraschedular rating is not warranted, as the manifestations of the Veteran's disability are considered by the schedular rating assigned. 38 C.F.R. § 3.321; Thun, 22 Vet. App. 111.

ORDER

A 20 percent rating for the Veteran's cervical strain from May 19, 2009, to April 17, 2016, is granted subject to regulations governing the payment of monetary awards.

A disability rating in excess of 20 percent for the Veteran's cervical strain for the period on and after April 18, 2016, is denied.

____________________________________________
K. J. ALIBRANDO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs